# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TOT POWER CONTROL, S.L.,<br><br>        Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD.,<br>SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>        Defendant. | C.A. No. 21-cv-1305-MN<br><br>**JURY TRIAL DEMANDED** |

**TOT POWER CONTROL S.L.'S OPENING DISCOVERY DISPUTE LETTER**

Dated: April 16, 2024

Walter D. Kelley, Jr. (DC No. 987524)
*Admitted Pro Hac Vice*
Brian A. Ratner (DC Bar No. 473284)
*Admitted Pro Hac Vice*
HAUSFELD, LLP
888 16th Street, NW, Suite 300
Washington, DC 20006
Tel: (202) 540-7157
Fax: (202 540-7201
wkelley@hausfeld.com
bratner@hausfeld.com
tzurawski@hausfeld.com

Bruce J. Wecker (CA No. 0778530)
*Admitted Pro Hac Vice*
HAUSFELD, LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1907
bwecker@hausfeld.com

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801
Tel: (302) 777-0300
Fax: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Denise M. De Mory (*Pro Hac Vice*)
Tara Zurawski (*Pro Hac Vice*)
Corey Johanningmeier (*Pro Hac Vice*)
BUNSOW DE MORY LLP
701 El Camino Real
Redwood City, CA 94063
Tel.: (650) 351-7248
Fax: (415) 426-4744
ddemory@bdiplaw.com
tzurawski@bdiplaw.com
cjohanningmeier@bdiplaw.com

*Counsel for Plaintiff*
*TOT Power Control, S.L.*

Dear Judge Fallon,

Plaintiff TOT Power Control, S.L. ("TOT" or "Plaintiff") respectfully requests that the Court order Defendants Samsung Electronics Co., Ltd. ("SEC") and Samsung Electronics America, Inc. ("SEA") to (1) produce financial information for all versions of device models identified as Accused Products, and (2) produce financial information for SEC's sales of Accused Products in the United States.

There is no dispute that TOT requested financial information for all Accused Products, and that SEA and SEC agreed to produce it. Ex. 1 at 16 (Samsung response to TOT RFP 10). The disputes relate to SEA's decision to withhold sales data for particular models even though it does not dispute they are the same for infringement purposes, and SEC's failure to produce any sales data at all.

SEC is the Korean parent of SEA; both entities are parties in this case. SEC designs and manufactures all the products that SEA sells in the United States. During discovery, *only* SEA produced sales data; SEC produced none even though it sells the products to SEA and to other entities for import into and sale in the United States.

For its part, SEA intentionally withheld relevant and responsive data that it agreed to produce in its discovery responses. Samsung products are identified by a model number followed by a letter. The letter corresponds to the cell phone carrier. So, for example, the Samsung Galaxy S22 for Verizon is identified as SM-S901V while the same phone for AT&T is identified as SM-S901A. SEA admits that for some models it excluded sales data for some carriers based on its self-determined interpretation of TOT's contentions and the rules in this case. To be clear, SEA has not disputed that the A and V versions of a product are identical for infringement purposes.

***Financial information for all versions of device models identified as Accused Products***:
It is undisputed that the sales spreadsheet that SEA produced in this case omits financial information for certain lettered versions of the Accused Products.[1] When TOT inquired about the missing sales data, Samsung's counsel first alleged that the products were not sold by SEA in the United States. After TOT sent evidence proving that the products were sold in the United States, Samsung's counsel offered a new explanation: Samsung decided to exclude data for certain carrier versions if TOT identified one but not all carrier designations in its list of Accused Products. Thus, using the example above, if TOT identified the Samsung Galaxy S22A but not the Galaxy S22V, then sales of Verizon devices were excluded from the sales data produced. However, if TOT didn't include any letter designation, then Samsung produced the sales data for all carrier versions.

Samsung had no justification for limiting its production in this way. TOT's disclosures in its Initial Infringement Contentions stated that the Samsung Accused Products include all versions of accused models that have substantially the same functionality. *See, e.g.*, Ex. 2 (Exhibit B to Initial Infringement Contentions) at 1 ("***The accused products listed in Exhibit A are not exhaustive. TOT accuses*** and will seek discovery as to the identity of ***any Samsung products***

---

[1] SEA produced these spreadsheets as SAMSUNG_00000001 (initial version) and SAMSUNG0293821 (updated version).

1

***with substantially similar designs to the expressly listed accused products***. ***Moreover, it may be that the same underlying products have multiple identification numbers based on, inter alia, differences in geographic sales locations, customers, product colors, or other features that do not affect the structure and infringement allegations of such products. TOT*** will also seek discovery regarding this information and ***asserts that these products infringe the asserted claims [for] the same reasons as identified herein***."); Ex. 3 (Exhibit G) at 1 (same).  TOT included substantially similar statements in its Final Infringement Contentions.[2]

Samsung does not dispute these statements either.  Instead, Samsung has unilaterally determined that the statements in TOT's Final Infringement Contentions are inoperative because the contentions were served after the January 26, 2024 deadline for TOT to supplement its list of Accused Products.  D.I. 30 at ¶ 13 as modified by D.I.. 74.  But as shown in Exhibits 2-4, TOT included substantially the same language in its Initial Infringement Contentions served on April 7, 2023.

Perhaps Samsung has some basis to later challenge TOT's inclusion of these sales in its damages calculations on this highly technical objection, but this is no basis to withhold discovery that it agreed to provide and is relevant and likely to lead to the discovery of admissible evidence.  Indeed, given the fact that Samsung produced all sales data for all carriers where letters were omitted entirely from TOT's list demonstrates that all carrier models are relevant.

Samsung alleges that TOT should have uncovered Samsung's omissions earlier.  But TOT diligently reviewed Samsung's financial data and raised this issue as soon as it came to light.  Indeed, Samsung's counsel initially indicated that the products were not included in the sales data because they were not sold in the United States.  Samsung did not even reveal the true reason for the omission until TOT pushed back with evidence TOT found on the Internet showing that Samsung's explanation was untrue.

TOT does not know the full extent of Samsung's omissions but given the unexpectedly low unit sales numbers SEA did produce relative to expected sales based on publicly available data and market, expects that it is significant.  It is imperative that TOT obtain financial information for ***all*** Accused Products, in order to seek the full amount of damages it is owed for Samsung's infringement.  An email chain containing the parties' discussions on this issue is attached for the Court's convenience.  Ex. 7 (emails between TOT and Samsung counsel dated March 18 to March 19, 2024).

***Financial information for SEC's sales of Accused Products in the United States***:
During meet and confers, Samsung's counsel indicated that Samsung would produce another spreadsheet for SEC like the spreadsheet it produced for SEA, with sales and costs data for

---

[2] *See* Ex. 4 (Final Infringement Contentions Cover Pleading) at 2 ("TOT alleges that Samsung directly infringes [the '865 Patent] by making, using (including through testing and demonstrations), offering for sale, selling, or importing into the United States the Accused Products identified in Exhibit A ***and any other products made, used, or sold by Samsung in the United States that include the same functionality*** (hereinafter the "Accused Products")); Ex. 5 (Exhibit B to Final Infringement Contentions) at 1; Ex. 6 (Exhibit D to Final Infringement Contentions) at 1.

SEC's U.S. sales of Accused Products. To date, Samsung has not made that production. Samsung indicated that it did not want to make any new productions until the Court ruled on TOT's first issue discussed above (i.e., the scope of Accused Products in this case).

Even if such a spreadsheet is ultimately produced, TOT is concerned that the information Samsung produces will be incomplete based on discussions to date. Samsung has taken the position that SEA is the only entity that sells products in the United States. But there are clearly other Samsung products sold in the United States that are not identified in SEA's sales. Moreover, the SEA sales data Samsung has produced shows unit sales far below what public Samsung market share data would suggest – as in off by at least 50%.

Samsung phones, which necessarily originate with SEC, get sold in the United States by entities other than SEA. For example, SEC sells products directly or indirectly to Integron Technologies, Inc., which then sells to customers in the United States on Amazon. Ex. 8 (sale of Samsung Galaxy S10 Lite SM-G770F on Amazon). In fact, there is an entire Samsung branded storefront on Amazon that sells products fulfilled by Integron. Ex. 9, (Integron storefront on Amazon). As one example, there are hundreds of U.S. customer reviews on Amazon about Galaxy S10 Lite, SM-G770F, which was first available on Amazon on February 5, 2020. Ex. 8. Yet, SEA's financials show no sales of this model that has been *specifically accused*.

There is little chance an entire branded Samsung storefront exists on Amazon without SEC knowing about it, and in any event, the phones sold via that site originated with SEC. If SEC does not sell them directly to Integron, or sells them to Integron or an intermediary outside the United States knowing that they will be sold in the United States, SEC can still be liable for these sales—regardless of whether there was an intermediary.

Samsung must produce data regarding these sales. *See Invensas Corp. v. Samsung Elecs. Co., Ltd.*, 2018 WL 5809268, *1-2 (E.D. Tex. Nov. 6, 2018) (compelling production of financial data relating to transfer of products from SEC to non-party U.S. subsidiary that sold the products to customers in the U.S.). But Samsung has named itself the unilateral arbiter of what information TOT can have about its sales, thereby precluding TOT from being able to explore SEC's potential liability for sales other than the SEA sales. Samsung should be ordered to produce appropriate sales data regarding any devices destined or potentially destined to the United States regardless of whether they are first sold outside the United States or sold through an intermediary, and if necessary, additional documents and testimony relating to the data.

As another concern, the SEA sales data does not reflect the actual profit SEC and SEA collectively enjoyed from Accused Product sales in the United States. The only cost information that has been provided is ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Ex. 10 (Diaz Deposition Tr.) at 40:22-41:3, 47:12-23. Samsung's 30(b)(6) witness did not know how it was calculated. *Id.* Because Samsung's 30(b)(6) witness did not know how the pricing of the Accused Products was set, TOT does not know how the fixed cost was calculated. This impacts the accuracy of calculating the profit SEC and SEA obtained together for selling the Accused Products.

At a minimum, the Court should order the production of financial information regarding SEC's

sales of Accused Products directly or indirectly to the U.S., which are U.S./infringing sales, even though the sales may have taken place in Korea.  *See* Ex. 11, *Uniloc 2017 LLC, v. Samsung Elecs. Co. Ltd.,* No. 2:18-CV-00508-JRG, D.I. 94 at 3-4 (E.D. Tex. Mar. 24, 2020) (compelling production of data for sales that took place in Korea to avoid a scenario where "Samsung would be able to artificially hide their profits creatively structuring their intra-subsidiary transfer.").

SEC's profits from its sales of Accused Products directly or indirectly to the U.S. will make up part of TOT's damages calculation.  SEC's financial information is essential to accurately calculating those damages.  Courts have ordered parties to produce such information, even when the parent company or subsidiary is not a party to the suit.  *See Orthoarm, Inc. v. Forestadent USA, Inc.*, No. 4:06-cv-730 CAS, 2007 WL 1796214 at *3 (E.D. Mo. June 19, 2007).

TOT respectfully requests that the Court order SEC to produce its financial and sales data and include all sales that have a shipping address or billing address in the United States, or which SEC knows will be sold in the US regardless of whether the products are first sold to a non-US entity and/or intermediary.

Respectfully submitted,

/s/ Brian E. Farnan

Brian E. Farnan

cc:  Counsel of Record (via e-mail)